**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**XAVIER WINESTON,**

     **Plaintiff,**

**vs.**                                 **CASE NO. 4:06CV438-RH/AK**

**JOHNNY PACK, et al,**

     **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this cause of action pursuant to 42 U.S.C. §1983 alleging that Defendants violated his civil rights. (Doc. 1). Defendants have filed a motion for summary judgment (doc. 66), to which Plaintiff has not responded. Plaintiff filed a motion for partial summary judgment prior to Defendant's motion, which will be considered at this time and in conjunction with Defendants' motion. (Doc. 59).

Three John Doe defendants were never identified or served. Plaintiff was advised that he could seek information about the identity of these persons during discovery (doc. 9), but he made no attempt to discover their names. Service was attempted on D. Williams, but it was returned un-executed with the notation that he was no longer employed at Taylor CI. (Doc. 17). Plaintiff was advised of this fact and did not offer additional information for service on this individual. (See Doc. 22).

## I.      Allegations of the Complaint (doc. 1)

Plaintiff claims that while he was housed at Taylor Correctional Institution he was assaulted on March 1, 2006, by Defendants Williams, Pack and Brown, causing facial abrasions and a bruised back and neck.  He also sues Warden Culpepper, Rouse and John Doe King, alleging they had information and should have protected him from this assault.  He sues Rouse also for placing him in confinement without sheets or blankets when the temperature dropped to 58 degrees.  Plaintiff alleges that when he reported the incident that occurred on March 1 to Defendant Ahman (correct name is Aman), Aman threatened to spray him with chemical agents, and later on March 21, 2006, Defendants John Doe Lee, Captain or Lieutenant John Doe, and Officer Rosenberg sprayed him with chemical agents without cause.  Plaintiff alleges that Officer Rosenberg wrote false DR's to justify use of the chemical agents, and Defendant Wallace, Brown and Williams threatened him and retaliated against him for reporting the use of chemical agents, including placing him in a cell with only a plastic mattress, boxer shorts, shower shoes, toilet paper and soap for 24 hours.

## II.     Standard of Review

A district court should grant summary judgment when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case."  Nolen v. Boca Raton Community Hospital, Inc., 373 F.3d 1151, 1154 (11th Cr. 2004), *citing* Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).  All issues of material fact should be resolved in favor of the Plaintiff or non-moving party before the Court determines the legal question of whether the defendant is

entitled to judgment as a matter of law under that version of the facts.  Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003); Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002).   The Plaintiff has the burden to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  Celotex, 477 U.S. at 322-23.  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof.  Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).  "For factual issues to be considered genuine, they must have a real basis in the record."  Mize v. Jefferson City Board of Education, 93 F.3d 739, 742 (11th Cir. 1996).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), cert. denied 522 U.S. 1126 (1998), quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

No. 4:06cv438-RH/AK

While a moving party is not required to support his motion for summary judgment with affidavits, <u>Celotex</u>, <u>supra</u> at 323, the facts stated in uncontradicted affidavits or other evidentiary materials must be accepted as true for purposes of summary judgment. <u>Gauck v. Meleski</u>, 346 F.2d 433, 436 (5th Cir. 1965).

## III.    Defendants Rule 56(e) evidence (doc. 85)

### a)    <u>Affidavit of Johnny Pack (doc. 85, exhibit B)</u>

Defendant Pack is a former employee of the FDOC, who was at the relevant time a correctional officer at Taylor CI.  He attests that on March 1, 2006, he saw Inmate Winston talking on the phone during an unauthorized time and when he spoke to him, Winston threatened to "get his ass," and he called him a bitch and a fuck boy.  Pack ordered Winston to submit to cuffing before being taken to administrative confinement and then wrote up a DR for Spoken Threats.  Pack called Sgt. Michael Brown and Officer D. Williams to escort Plaintiff to confinement.  He transferred custody to them and returned to his post without incident.  He did not issue the DR because Winston had written grievances and he denies any assault or use of force by him.

### b)    <u>Affidavit of John Rouse (doc. 85, exhibit C)</u>

Defendant Rouse is a Captain at Taylor CI.  On the date in question he was shift supervisor during the noon hour when he received a call from Officer Pack that he was writing a DR on Winston for using the phone and he wanted him transferred to administrative confinement.  During the same noon hour, he received a call from a woman identifying herself as Winston's mother who said a "high official" at DOC had called her to say that her son was being harassed by officers, Johnny Pack in particular.

**No. 4:06cv438-RH/AK**

She would not identify the official who called her. Rouse told her he would check into it and she should call him later that afternoon, but before he could take any action on the call he received notice of a use of force. Upon investigation, he concluded that the use of force and DR was appropriate, Wineston was given a post use of force physical, but because he continued to have a "poor attitude," his property was restricted pursuant to Rule 33-602.220(5)(q). Bed linens are restricted in such situations because they can be used to cover windows and cell doors and may prevent effective observation or inhibit the use of gas, if needed. That afternoon Rouse spoke with Wineston's mother and sister and informed them of his status. The next morning Wineston was issued his property, including bed linens.

On March 3, 2006, Assistant Warden Patterson called and reported a conversation with Wineston's mother wherein she said she told Rouse that Pack was threatening her son. Rouse went to Wineston and asked if he wanted protection and he signed a refusal because he explained he just wanted to get transferred.

c)    <u>Affidavit of Michael Brown (exhibit D)</u>

Defendant Brown describes an incident during his escort of Inmate Wineston on March 1, 2006, when he began yelling "I done called my people and told them I was gonna fuck one of ya'll up." Wineston began twisting away from Brown and then head butted him on the left side of his forehead. He continued trying to strike Brown shouting, "I told you I was gonna get one of you motherfuckers." Brown then grabbed Wineston's left arm and Officer Williams grabbed his right arm and they took him to the ground face down. Even on the ground Wineston kicked at the officers and Officer

**No. 4:06cv438-RH/AK**

Rosenberg was called to bring leg restraints. Wineston was carried into the confinement unit. A medical examination of Brown revealed a contusion with swelling on the left side of his forehead. He denies use of force, except as was necessary in response to Wineston's aggressive action and only insofar as to bring him under control.

d)    Incident Report of Daniel Williams (exhibit E)

An Incident Report dated March 1, 2006, prepared by Officer Daniel Williams: At approximately 1250 hours, on March 1, 2006, while assigned as Internal Security Office I was assistant Sergeant Michael Brown in escorting Inmate Wineston, Xavier DC # 38959, from K-Dormitory to medical for a pre-confinement physical. At approximately 1253 hours, I heard and observed Inmate Wineston physically assault Sergeant M. Brown by striking him above his left eye with his forehead. At this time, Sergeant M. Brown and myself gave Inmate Wineston numerous verbal orders to cease his aggressive actions, to no avail. Inmate Wineston continued to attempt to head-butt Sergeant M. Brown. At this time, I grasped Inmate Wineston by his right arm with both my right and left hands, and with the assistance of Sergeant M. Brown, we placed Inmate Wineston on the ground, face down. At approximately 1254 hours, Inmate Wineston continued his aggressive actions by attempting to kick myself and Sergeant M. Brown. At approximately 1255 hours, Officer Jeffrey Rosenberg arrived on the scene, secured Inmate Wineston's feet, and applied leg restraints on Inmate Wineston. At approximately 1256 hours, Sergeant M. Brown ordered Inmate Wineston to stand up in order to be escorted to confinement, to no avail. Inmate Wineston continued his aggressive and disruptive behavior, and stated: "I ain't walking, fuckboys, whatcha gonna do about it now?" At this time Sergeant M. Brown instructed me to grasp Inmate Wineston underneath his right arm and assist in carrying him to the confinement unit to which I did. At approximately 1257 hours, upon arrival at the entrance door of the confinement unit, Sergeant M. Brown again ordered Inmate Wineston to cease his disruptive behavior to which he reluctantly complied and all use of force ceased at this time. Inmate Wineston was then escorted to a lower tier confinement shower cell and secured. Also at this time Officer Staci Whiddon began filming this occurrence. At approximately 1315 hours, Inmate Wineston received a post use of force Physical, conducted by Nurse Charles Hartsfield, LPN. At approximately 1340 hours, I received a post use of force physical, conducted by Nurse Hartsfield.

**No. 4:06cv438-RH/AK**

Only the minimum amount of force was used to gain lawful compliance to lawful commands.

e)    Affidavit of Jeffrey Rosenberg (exhibit F)

Defendant Rosenberg, a former employee at Taylor Correctional Institution, was present on the quad on March 21, 2009, and responded to a disturbance that he discovered was being caused by Inmate Wineston.  Rosenberg, with the assistance of Defendant Aubrey Aman, found Wineston calling to other inmates to "tear the doors off this bitch and fuck these crackers up!"  Wineston refused to stop after their counseling and was given a DR for Inciting a Minor Disturbance and Disobeying an Order. Wineston barricaded his cell using his mattress and bed stuff and was flooding it, so authorization was obtained for use of chemical agents to subdue him.  After he was sprayed, he was cuffed and taken to the shower to wash off, given clean underclothes, and taken for a post use of force physical.  Wineston was not give bed linens in his cell until March 23, 2009, because he had used them previously in a destructive manner.

f)    Post Use of Force Physical dated 3/1/06 (exhibits G and H)

Examination revealed a minor abrasion to the left temple with slight swelling.   He complained of pain in the left side of his face and his forehand.  Advil was given to him for 3 days.  Medical records one week later show Wineston complained of back pain and stomach issues, but nothing apparently related to the use of force.

Medical records after use of chemical agents on March 21, 2006, show no injuries, no trauma.

**No. 4:06cv438-RH/AK**

g)    Post Use of Force Examinations of Officers (exhibits J, K, and L)

Officer Brown had a 2" by 2" contusion on the left side of his forehead with swelling.  Officer Williams had a minor abrasion with discoloration and swelling to his left elbow.  Officer Rosenberg reported no injuries.

h)    Two DR's issued on March 1, 2006 (exhibits M and N)

One for spoken threats (against Pack) and unarmed assault (against Brown).

i)    Daily Record of Segregation 3/21/06 (exhibit O)

Describes incident when Plaintiff barricaded himself in cell and chemical agents were administered.

j)    Affidavit of Defendant Aman (exhibit P)

Aman attests that on March 21, 2006, he responded to loud yelling coming from Inmate Wineston's cell.  He reports that yelling not only disturbs and agitates other inmates, it makes it difficult to monitor activity and poses a security threat, so it must be stopped, often by removing the inmate from his cell.  Despite counseling by Aman and others, Inmate Wineston continued shouting and began flooding his cell.  Water had to be turned off to the wing.  Authorization for use of a chemical agent was obtained, but Inmate Wineston began barricading himself in with his mattress and sheets, so authorization for "CS" had to be obtained since it can be administered by a high volume fogger.  A final warning was given, to no avail, so chemical agents were administered. Inmate Wineston was subdued and cuffed, and after initially refusing a shower, he submitted to one and was given new underclothes and taken to a clean cell.  He was not given his property or bed linens since he had used these before, but when he

**No. 4:06cv438-RH/AK**

remained calm, all property was returned to him on March 23, 2006, at 9:30 a.m.  None of these actions were taken as a result of his filing grievances, but were necessary to maintain control and security.

k)    Affidavit of Defendant Wallace (exhibit Q)

Wallace was assigned to investigate the DR of March 1, 2006, and was provided the names of six inmate witnesses to the incident by Wineston.  Four of the six provided statements.  None of them were threatened.

l)    Emergency room medical records after 3/21/06 incident (exhibit R)

Following use of chemical agents, no complaints were made, no injuries were noted.

m)    Two disciplinary reports following 3/21/06 incident (exhibits S and T)

DR's issued for inciting a disturbance and disobeying an order.

n)    Report of Close Management (exhibit U)

Following an assault on an officer, inmates are given a mandatory referral for close management.  This one dated 3/15/2006 followed the 3/1/2006 incident.

o)    Transfer record (exhibit V)

Plaintiff was transferred to Charlotte CI from Taylor Annex on 4/17/06.

p)    Release from Close Management (exhibit W)

Plaintiff remained in close management from 4/6/06 through 4/17/08 when he was released because he had remained DR free during this time period.

**No. 4:06cv438-RH/AK**

q)    Inspector General's Investigative Report (exhibit X)

Plaintiff's complaint of assault by Officers Pack, Brown and Williams was investigated.  The phone call made by Plaintiff on March 1, 2006, was retrieved and in that conversation he told his family to write down the names Pack, Brown and Williams, that Plaintiff would "check in" under their names, and say he was in fear of his life so he could get a transfer.  He told his family to call within the hour and report that he was being threatened.  Several inmate witnesses were interviewed and provided statements which are attached to the report.  Two reported seeing the incident.  Inmate Alberto Hernandez said he saw officers throw Wineston to the ground, but he did not see what preceded it.  Inmate Santos Hernandez said he saw Williams and Brown escorting Plaintiff when Williams tripped him face first, pushed his knee in the back of his head, and pushed his face in the dirt.  Officer Rosenberg reported that he was called to assist in putting leg irons on Plaintiff after he head butted Officer Brown and continued kicking at the officers on the ground.

r)    Affidavit of Inspector Brandon (exhibit Y)

Brandon investigated the use of force incident and he closed it for lack of leads, but found the injuries of all the parties were consistent with the description of what happened according to the officers' version.

s)    Affidavit of Defendant Culpepper (exhibit Z)

Warden Culpepper did not speak with any of Plaintiff's family members, and reports that family members' phone calls are usually handled by other institutional staff members.

**No. 4:06cv438-RH/AK**

t)      Affidavit of Arvelia Williamson (exhibit AA)

Ms. Williamson is Classification Officer currently at Gulf CI. She reviewed Plaintiff's file and could find no grievances against any of the named Defendants filed by Plaintiff prior to the incident in March 2006.

u)      Use of Force report dated 3/2/06 (exhibit CC)

Officer Brown reported that he was escorting Plaintiff with Officer Williams when Plaintiff became disruptive and struck him in the head with his head.  Brown and Williams put Plaintiff to the ground chest first and he continued kicking at them until Rosenberg arrived and put leg restraints on him.  Plaintiff was then carried part of the way, and then walked to medical.

v)      Use of Force dated 3/22/06 (exhibit DD)

Describes the later incident when Plaintiff created a disturbance in his cell and chemical agents were applied.

## IV.    Plaintiff's Motion for Partial Summary Judgment (doc. 59)

Plaintiff has filed a motion for summary judgment on his due process claim only. He claims that Defendant Wallace threatened his witnesses with assault so they would not testify at the DR hearing and that Defendant Culpepper denied his grievance appeal on the issue.

a)      DR's dated March 1, 2006 (exhibits 1 - 2)

One DR charged Plaintiff with threatening Johnny Pack and the other was for unarmed assault for head butting Sergeant Brown on March 1, 2006, while being escorted from K dorm to medical for pre-confinement examination.  Plaintiff was found

**No. 4:06cv438-RH/AK**

guilty and the DR notes that inmate statements were considered, but Plaintiff refused to participate.

b)   Affidavit of Herschell Upshaw (exhibit 3)

Inmate Upshaw attests that he heard Defendant Aman tell Plaintiff that if he wrote something up he would be "next," which Upshaw knew to mean Plaintiff would be gassed. Upshaw, too, was threatened to be quiet about the officers gassing him and others. Upshaw was confined on the date in question and could see Plaintiff's cell perfectly, and he did not hear Plaintiff yelling or banging on the door the day he was gassed.

c)   Affidavit of Freddie Henderson (exhibit 3)

Inmate Henderson attests that his family, too, was threatened for calling on his behalf, and that he was present in confinement when he saw Defendant Aman kick and yell at Plaintiff, saying "Why are you kicking and yelling out the door." Inmate Henderson attests that Plaintiff was not kicking or yelling. Inmate Henderson said he overheard Defendant Aman, Chandler and Rosenberg say they will gas anyone whose family calls the institution.

d)   Incident Reports (exhibit 4)

CO Jeffrey Rosenberg reported:

At approximately 1254 hours on March 1, 2006, while assigned as Confinement Officer, I responded to a call for assistance via radio by Sergeant Michael Brown, requesting leg restraints be brought to him in front of J-Dormitory. At approximately 1255 hours, I arrived in front of J-Dormitory and observed Sergeant M. Brown and Officer Daniel Williams on the ground with Inmate Wineston, Xavier DC #38959. I heard and observed Inmate Wineston yelling and attempting to kick Sergeant M. Brown and Officer D. Williams. At this time, I gained control of Inmate

**No. 4:06cv438-RH/AK**

Wineston's feet by grasping them with both my right and left hand, I then applied leg restraints to both Inmate Wineston's feet. At this time, Sergeant M. Brown gave Inmate Wineston numerous verbal orders to stand up in order to be escorted to confinement, to no avail. Inmate Wineston stated, " I ain't walking, fuckboys, whatcha gonna do now?" At approximately 1256 hours, I was instructed by Sergeant M. Brown to assist in carrying Inmate Wineston to the confinement unit, to which I did. At approximately 1257 hours, at the entrance to the confinement unit, Sergeant M. Brown again ordered Inmate Wineston to cease his disorderly behavior and to stand and walk, to which he reluctantly complied. At this time, all use of force ceased. Inmate Wineston was then escorted and placed in a secure lower tier confinement shower cell. Also at this time, Officer Staci Whiddon entered the confinement unit and began taping the occurrence. At approximately 1315 hours, Inmate Wineston received a [redacted]. At approximately 1330 hours Inmate Wineston received [redacted]. At approximately 1334 hours Inmate Wineston submitted to handcuffing procedures, was removed from the shower cell and was escorted by Sergeant [indecipherable] and myself to secure cell without further incident. At approximately 1345 hours I received [redacted]. Only the minimum amount of force was used to control Inmate Wineston and gain compliance.

[see Doc. 85, exhibit E for Williams' Incident Report]

Sergeant Michael Brown prepared the following:

At approximately 1250 hours on March 1, 2006, while assigned as the vehicle gate supervisor, I and officer Daniel Williams were escorting Inmate Wineston DC # 38959 from K-Dormitory to the Annex [redacted]. At approximately 1252 hours while escorting Inmate Wineston past J-Dormitory inmate Wineston stated in a loud and aggressive tone of voice: "I done called my people and told them I was gonna fuck one of ya'll up!" I then ordered Inmate Wineston to cease his disorderly behavior to no avail. Inmate Wineston continued to yell and attempted to twist away from my grasp on his left arm. I again ordered Inmate Wineston to cease aggressive and disorderly actions, to no avail. Inmate Wineston then again attempted to twist away from my grasp on his left arm and deliberately struck me on the left side of my forehead above my left eye with his forehead and stated " I told you I was gonna get one of you motherfuckers." At approximately 1253 hours Inmate Wineston continued his aggression towards myself by continuously attempting to strike me with his head. At this time I grasped Inmate Wineston by his left arm with both my left arm and right hand, and with the assistance of officer D. Williams we placed Inmate Wineston on the ground face down in order to

**No. 4:06cv438-RH/AK**

cease his aggression toward myself.  At approximately 1254 hours Inmate Wineston while on the ground continued to resist and attempt to stand up and kick myself and Officer D. Williams.  At approximately 1255 hours Officer Jeffery Rosenberg arrived with leg restraints and placed them securely on Inmate Wineston.  Inmate Wineston [indecipherable] continuing his aggressive behavior.  At approximately 1256 hours I ordered Inmate Wineston to stand up and instructed [indecipherable] to assist Inmate Wineston to his feet, to no avail.  Inmate Wineston then yelled "I ain't walking, fuckboys, whatcha gonna do now?" [Indecipherable] off the ground and physically carried Inmate Wineston to the entrance door of the confinement unit.  At approximately 1257 hours at the entrance door of the confinement unit Inmate Wineston reluctantly complied with verbal orders by ceasing his disruptive actions and began walking without assistance.  At this time Inmate Wineston was secured in a lower tier confinement shower cell in the confinement unit.  At this time officer S. Whiddon entered with the hand held video camera and videotaping of this occurrence began.  At approximately 1314 hours John Rouse gave a brief lead-in statement on camera of the incident.  At approximately 1315 hours [redacted].  At approximately 1330 hours inmate Wineston received [redacted].  At approximately 1334 hours Inmate Wineston submitted to handcuff procedures [indecipherable] form the showers and escorted to a lower tier secured cell without further incident.  At this time Captain Rouse gave closing statement [indecipherable] this occurrence and videotaping with the hand held video camera concluded.  At approximately 1335 hours I received a post use of force physical noting a bruise on my forehead above my left eye inflicted by Inmate Wineston.  At approximately 1343 hours the videotape was removed form the fixed video recording system in J-dormitory by Captain J. Rouse.  At approximately 1430 hours the Emergency Action Center Duty Officer contacted and provided case #0553.  Only the minimum amount of force was used to control Inmate Wineston and gain compliance to a lawful command.  The duty warden was notified.

e)     Grievances (exhibits 5)

None of these grievances concern the due process issue.

## V.     Analysis

a)     Use of Force

Under the Eighth Amendment, force is deemed legitimate in a prison setting as

long as it is used "in a good faith effort to maintain or restore discipline [and not]

**No. 4:06cv438-RH/AK**

maliciously and sadistically to cause harm." <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21

(1986), quoting <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2nd Cir. 1973).  A variety of

factors are considered in determining whether the force was applied maliciously or

sadistically, including the need for force, the relationship between that need and the

amount of force used, the threat reasonably perceived by the prison officials applying it,

and any efforts made to temper the severity of the force used.  <u>Hudson v. McMillian</u>,

503 U.S. 1, 7-8 (1992).  A *de minimis* use of force, as evidenced by no injury, is one of

the factors for consideration and cannot support a claim of excessive use of force.

<u>Hudson</u>, at 7.

Defendants cite a district court case from the Northern District of Texas for the

definition of *de minimis* applied by that court which the undersigned finds helpful and

persuasive:

> A claim by a prisoner of an injury in prison he received in an unprovoked
> assault or excessive use of force by the guards or a failure to protect
> other inmates should utilize the same approach to the nature of the injury
> and whether it actually falls under the new statute with regard to being a
> physical injury as to how people in a free world setting in exercising their
> day-to-day medical care would treat such injuries. Just as an example,
> there are numerous scrapes, scratches, cuts, abrasions, bruises, pulled
> muscles, back aches, leg aches, etc., which are suffered by free world
> people in just every day living for which they never seek professional
> medical care. Thus, an appropriate de minimis standard would be whether
> as a common-sense category approach to the injury; would the injury
> require or not require a free world person to visit an emergency room, or
> have a doctor attend to, give an opinion, diagnosis and/or medical
> treatment for the injury? In effect, would only home treatment suffice?
>
> ***
>
> A physical injury is an observable or diagnosable medical condition
> requiring treatment by a medical care professional. It is not a sore muscle,
> an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up
> to two or three weeks. People in the regular and ordinary events and

**No. 4:06cv438-RH/AK**

activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care.

Luong v. Hatt, 979 F. Supp. 481, 486 (N. D. Texas 1997).  While the Eleventh Circuit has not adopted this precise definition, it has been applied by the United States District Court for the Middle District of Florida, Watkins v. Trinity Service Group, 2006 WL 3408176, and by district courts in Alabama and Georgia, which are included in the Eleventh Circuit.  See Daughtry v. Moore, 2009 WL 1151858 (S.D. Ala.); Johnson v. Moody, 2006 WL 898135 (S.D. Ala); Talley v. Johnson, 2008 WL 2223259 (M.D. Ga.); Johnson v. Bainbridge Public Safety, 2007 WL 2593969 (M.D. Ga.); Radford v. Johnson, 2006 WL 2927578 (M.D. Ga)  This definition and the Luong case has been cited positively by both the Third and Sixth Circuits as well.  See Perez v. United States, 2009 WL 1426765 (3rd Cir.) and Jarriett v. Wilson, 162 Fed. Appx. 394 (6th Cir. 2005).

Plaintiff complains about two incidents: one on March 1, 2006, and another on March 21, 2006.  The undersigned finds that Plaintiff has failed to state a claim for excessive use of force as to either incident for two reasons: he suffered only a de minimis injury (and no injury as a result of the later incident) and the force used was applied in a good faith effort to restore discipline.

First, medical records show that on March 1, 2006, Plaintiff suffered a minor contusion to his left forehead with minimal swelling for which he was given Advil for three days.  These injuries are de minimis within the meaning of the term set forth above and inconsistent with an excessive use of force.  They are not consistent with

**No. 4:06cv438-RH/AK**

what Plaintiff (and Inmate S. Hernandez) described happened to him, e.g., being tripped face first into the ground, with a knee to the back of his head, and his face ground into the dirt.  A week later, Plaintiff was seen for an unrelated condition and did not complain about his head or face or anything about the alleged assault.

The injuries suffered by Officers Brown and Williams were more egregious than those noted on Plaintiff and are consistent with their version of the incident that Plaintiff head butted Brown and then continued kicking and twisting away from them while they tried to hold him to the ground.

No injuries were reported resulting from the March 21, 2006, incident.

Second, in the context of quelling a prison disturbance, the Supreme Court explained that "whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm. Whitley at 320-321.

All the various documents about the two incidents (affidavits, incident reports, daily segregation log, investigative reports) are almost identical in their descriptions of what occurred, even as to the colorful language used by Plaintiff, and all are consistent in that Plaintiff began the disruption by being aggressive, out of control, threatening, and inciting others.  Despite counseling, Plaintiff caused injury to one officer, continued kicking and twisting away from them causing an elbow injury to another officer, and still refused to comply with their commands after being restrained by a third officer.  On March 21, 2006, he created a disturbance, refused to stop, barricaded his cell with his

**No. 4:06cv438-RH/AK**

mattress, began flooding his cell, and the application of chemical agents was necessary to subdue his behavior and remove him from his cell.

Other evidence, particularly the recorded phone call made on March 1, 2006, provides sufficient cause for the incident in that Plaintiff wanted to create a disturbance so he would be transferred. It worked and he was transferred within a few weeks. His version of the retaliatory motive for the incident is unsupported by the record in that he had not filed any grievances against Officer Pack, Brown or Williams.

There is no merit to this ground for relief.

b)      Failure to Protect

"'[P]rison officials have a duty...to protect prisoners from violence at the hands of other prisoners.' ... It is not, however, every injury suffered by one prisoner at the hands of another that translates into [a] constitutional liability. Farmer v. Brennan, 511 U.S. 825 (1994)(citations omitted). To show a violation of an inmate's Eighth Amendment right to be protected, a Plaintiff must show: (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation. Hale, supra at 1582. Each element must be proven. Purcell ex rel Estate of Morgan v. Toombs County, 400 F.3d 1313 (11th Cir. 2005); Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995); LaMarca v. Turner, 995 F.2d 1526, 1537 (11 Cir. 1993). The mere knowledge of a dangerous condition does not establish deliberate indifference, the plaintiff must demonstrate that with knowledge of the dangers, the defendants knowingly or reckless declined to take actions that would have improved the conditions. LaMarca v. Turner, 995 F.2d 1526, 1537 (11 Cir. 1993).

**No. 4:06cv438-RH/AK**

Insofar as Plaintiff names Warden Culpepper, the warden denies receiving a phone call from Plaintiff's family that would have put him on notice of a risk of harm. According to the warden, he would not have taken such a call it would have been handled by the Assistant Warden Nathaniel Patterson or Plaintiff's Classification officer. Further, even if Plaintiff's facts were true and his family called 25 to 35 minutes before the attack, when liability is predicated on a failure to protect, evidence must be presented showing that the person was in a position to intervene. See Hadley v. Gutierrez, 526 F.3d 1324, 1331 (11th Cir. 2008) (no evidence presented that officer could have anticipated the use of force by his partner in time to prevent the blow, one punch in the stomach, to the victim). As the warden attests, such a short amount of time would not have allowed him time to locate Plaintiff and send officers to prevent any type of attack.

This factor also negates any claim against Defendant Rouse who received a phone call from Plaintiff's mother minutes before the use of force incident. Defendant Rouse did not participate in the escort and ultimate take down of Plaintiff which occurred prior to his investigating the substance of the phone call. Further, the nature of the phone call was that Pack was giving Plaintiff "a hard time," not that he had threatened him. An officer must have knowledge of a risk of serious harm before liability can be imposed for failing to respond appropriately. Based on the substance of the call, Defendant Rouse acted reasonably in not responding with more immediacy than he did.

There is no merit to this claim either.

**No. 4:06cv438-RH/AK**

c)      General Conditions of Confinement

The Constitution does not mandate comfortable prisons, but it does require humane ones.  Rhodes v. Chapman, 452 U.S. 337, 346 (1981).   "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."   Whitley v. Albers, 475 U.S. 312, 319 (1986).  In order to rise to the level of an Eighth Amendment violation, a prisoner must prove both an objective and subjective component: (1) a serious condition, and (2) that the prison officials acted with a sufficiently culpable mind.  Hudson v. McMillian, 503 U.S. 1, 8 (1992).  As to the first component, the prisoner must show:

> the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition of confinement]. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

Hudson, at 8.  And the second component requires a showing that the prison officials acted with deliberate indifference:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

**No. 4:06cv438-RH/AK**

Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Negligence will not suffice.  Wilson v. Seiter, 501 U.S. 294, 305 (1991).

In Chandler v. Crosby, 379 F.3d 1278 (11th Cir. 2004), the Eleventh Circuit examined a number of cases across the nation for guidance on when allegations of extreme cold qualified as "cruel and unusual punishment."  Cases where conditions were found to be serious deprivations were: Mitchell v. Maynard, 80 F.3d 1433, 1443 (10th Cir.1996) (lack of heat combined with the lack of clothing and bedding over extended period of time with other conditions such as no exercise, no hot water, no toilet paper); Del Raine v. Williford, 32 F.3d 1024, 1035-36 (7th Cir.1994) (broken windows offered no relief from the outdoor wind chills of forty to fifty degrees below zero); Henderson v. DeRobertis, 940 F.2d 1055, 1060 (7th Cir.1991) (inmates exposed to temperatures below freezing for four days); Corselli v. Coughlin, 842 F.2d 23, 27 (2d Cir.1988) (inmate exposed for 3 months to temperatures so cold there was ice in the toilet bowl); Lewis v. Lane, 816 F.2d 1165, 1171 (7th Cir.1987) (inmate exposed repeatedly to cell temperatures between 52 and 54 degrees).

Cases where conditions were **not** found to constitute constitutional violations were:  Palmer v. Johnson, 193 F.3d 346, 349 (5th Cir.1999) (inmates left outdoors overnight in temperatures of 59 degree temperatures); and Hernandez v. Florida Department of Corrections, 281 Fed. Appx. 862 (11th Cir. 2008) (exposure to winter temperatures such as they are in Northern Florida for two months not considered harmful to inmate's health).

**No. 4:06cv438-RH/AK**

Here, Plaintiff claims it was cruel and unusual to deny him clothes and a bed for less than 24 hours. He suffered no injury from this and the facts show that he had used his mattress and sheets to barricade himself in his cell and avoid extraction and had been a disciplinary problem. Affidavits from the Defendants establish that under such circumstances it is standard practice to remove property from a cell until the inmate has calmed down and ceases being a disciplinary issue. The security reasons for removing property from a cell when an inmate is being disruptive allow for easy extraction and observation. Under the circumstances, the reasons for denial of property for the time period were for security reasons and not for malicious purposes. Further, there was no injury from the denial of clothing and bed items. Consequently, Plaintiff has failed to state a claim for relief on this claim as well.

    d)    <u>Retaliation</u>

Although Plaintiff claims that retaliation was the cause of the use of force, his basis for this claim (that the actions by the officers was because of his grievance filing) is not supported by the facts. He had filed no grievances against any of the defendants prior to the March incidents. Conclusory allegations of retaliation without "some facts" that would indicate that the retaliatory act was in retaliation for filing grievances is not sufficient. <u>See</u> <u>White v. Thompson</u>, 2007 WL 2324613 (S. D. Ga. 2007). <u>See</u> <u>also</u> <u>Farrow v. West</u>, 320 F.3d 1235, 1248 (11th Cir. 2003) (prisoner may establish retaliation by "demonstrating that the prison official's actions were `the result of his having filed a grievance concerning the conditions of his imprisonment.'"). The allegations must be more than "general attacks" upon a defendant's motivations, Plaintiff must produce

"affirmative evidence" of retaliation from which a jury could find that plaintiff had carried his burden of proving the requisite motive. <u>Crawford-El v. Britton</u>, 523 U.S. 574, 600, 118 S.Ct. 1584, 1598, 140 L.Ed.2d 759 (1998) (citations omitted).  A prisoner does not automatically cast doubt upon an institutional decision, nor is the decision "subject to exhaustive challenge," solely because he was engaged in a First Amendment right. <u>Adams v. James</u>, 784 F.2d 1077, 1082 (11th Cir. 1986); <u>Adams v. James</u>, 797 F.Supp. 940, 949 (M.D. Fla. 1992).

    e)   <u>Due Process</u>

Plaintiff claims that Defendant Wallace threatened his witnesses to the use of force on March 1, 2006, preventing them from testifying on his behalf at his disciplinary hearing.

First, Defendants show that this claim is unexhausted.  Plaintiff attached copies of grievances to his motion for partial summary judgment, but none of them pertain to this claim.

Second, the DR at issue refers to witness statements that were considered by the team.  Plaintiff himself did not participate in the hearing process.

Finally, the investigative report shows that inmate witness statements were obtained and they are attached to the report.

This claim should be denied for failure to exhaust and because it is unsupported by the facts.

**After careful consideration, the undersigned finds that Plaintiff orchestrated the sequence of events to obtain a transfer and then persisted in his**

**No. 4:06cv438-RH/AK**

**misrepresentation of the facts to pursue this lawsuit causing considerable effort and expense for the Defendants, to whom he had already caused physical injury, and this type of blatant manipulation of the court and the DOC should be referred for disciplinary action by the prison administration as they deem appropriate.**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motion for Summary Judgment (doc. 66) be **GRANTED**; that Plaintiff's Motion for Partial Summary Judgment (doc. 59) be **DISMISSED** for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997(e); and that the remainder of Plaintiff's claims be **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2), and that the order adopting this report and recommendation direct the clerk of court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**IN CHAMBERS** at Gainesville, Florida, this _**8th**_ Day of September, 2009.

_**s/ A. KORNBLUM**_
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

<u>**NOTICE TO THE PARTIES**</u>

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 4:06cv438-RH/AK**